In the Matter of the Conservatorship of James Bishop, Spendthrift. James Bishop, Appellant, v. James A. Welch, Appellee.

1. CONSERVATOR—*when petition for· appointment of, for alleged spendthrift not insufficient.* A petition filed for the appointment of a conservator for an alleged spendthrift is not insufficient if it fails to allege in the language of the statute that such alleged spendthrift if such conservator was not appointed, was likely "so to spend, waste or lessen his estate as to expose himself or his family to want or suffering, or some county, town or incorporated

city or village to any charge or expense for the support of such spendthrift or his family."

2. Conservator—*when irregularities in petition for appointment waived.* A technical insufficiency in the petition for the appointment of a conservator for an alleged spendthrift is waived by appearing generally to the merits.

3. Conservator—*when proceedings for appointment for alleged spendthrift not erroneous.* Proceedings resulting in the appointment of a conservator for a spendthrift need not strictly follow the act relating to the commitment and detention of lunatics.

4. Appeals and errors—*how record cannot be impeached.* A judicial record imports absolute verity and cannot be impeached by parol testimony.

Petition for removal of conservator, etc. Appeal from the Circuit Court of McLean county; the Hon. Colostin D. Myers, Judge, presiding. Heard in this court at the May term, 1908. Affirmed. Opinion filed May 22, 1909.

Wight & Alexander, for appellant.

Bracken, Young & Pierce, R. C. DeMange and A. E. DeMange, for appellee.

Mr. Justice Baume delivered the opinion of the court.

On March 16, 1903, James A. Bishop, a son of the appellant, James Bishop, filed his petition in the County Court of McLean county, wherein he represented to the court that he was a reputable citizen of the said county, and that the appellant was a resident of said county; that he believed that appellant was a spendthrift and by reason of such condition of unsoundness of mind was incapable of managing and caring for his own estate; that the fact in the case could be shown by Dr. McFarland, a regular practicing physician, having personal knowledge of said case, and by certain other persons, and that the said appellant was possessed of real and personal estate, the safe keeping of which requires the appointment of a conservator. The petitioner prayed that summons be issued for said appellant; that a venire be issued for a jury and subpoena be issued for the witnesses

named, returnable at such time as the court should fix; that proceedings be had to inquire into the condition of said appellant, and that a conservator be appointed for said appellant according to the statute in such case made and provided. Thereupon the court fixed upon March 20, 1903, at 10 o'clock A. M., as the time for a hearing on said petition and ordered a summons issued for appellant. Summons was served upon appellant on March 16, 1903, by the sheriff of McLean county, to appear at the time and place designated in the order. Thereafter, at the time and place so fixed by the court the issues made by the petition were tried by a jury who returned a verdict finding that appellant was a spendthrift and by reason thereof was incapable of managing and caring for his own estate. Thereafter, on the same day, one James A. Welch was appointed conservator of appellant. The record of the proceedings then had contains among other recitals, the following: "Now comes the said sheriff and brings into open court said James Bishop alleged to be a spendthrift."

On May 9, 1904, appellant filed his petition in the County Court verified by his affidavit, wherein he represented that James A. Welch was appointed conservator of his estate on March 20, 1903; that he was capable of managing his estate and transacting his business, and wherein he prayed that a jury might be summoned to ascertain and determine whether or not he was capable of managing his estate and transacting his business. No hearing was had on this petition and the proceeding was abandoned. On November 14, 1907, appellant filed another petition in the County Court representing that he was 86 years of age, in feeble health, unable to walk and confined to his house; that on March 20, 1903, he was adjudged a spendthrift by the court and James A. Welch was appointed conservator for his estate, but was not given the care and control of his person; that he was the owner of 400 acres of farm land and two residence properties and

a large amount of personal property; that the land was capable of producing an income of from five to eight dollars per acre, but under the management of the conservator was producing less than three dollars and that James A. Bishop, one of his sons, was permitted to occupy one of his residence properties without paying rent; that his granddaughter, Mary F. Funk, had lived with him for more than twenty years and had complete charge of his household affairs and that it was his desire to have her to continue to reside with him and care for him; that on November 11, 1907, his conservator came to his house and took possession of his home and put James A. Bishop and Mattie Bishop, his wife, in the house. Further, the petitioner prayed for general relief from the acts of his conservator; that said Welch be removed as his conservator, and that some discreet and prudent man be appointed his conservator in place of said Welch. On December 10, 1907, appellant asked and obtained leave to withdraw said petition.

In and by his petition filed in the County Court December 20, 1907, and amendments thereto filed December 30, and December 31, appellant alleged certain improper conduct on the part of his conservator respecting the management and control of his estate and further represented that the jury which found him to be a spendthrift and incapable of managing and caring for his own estate did not find by their verdict that he was present in court at the hearing then had on March 20, 1903; that the service of summons on him in that proceeding was illegal and void, and the court thereby acquired no jurisdiction over his person or property; that he was not personally in court at the time of said hearing, but was then in Hot Springs, Arkansas; that no notice was given him, as required by statute, unless said summons was such notice; that the petition filed in the said court for the appointment of said conservator of his estate was greatly defective in that he was not alleged therein, "so to spend, waste, or lessen his

estate as to expose himself or his family to want or
suffering, or any county, town or incorporated city or
village, to any charge or expense for the support of
himself or his family,'' as by statute in such case made
and provided, and for that reason the court acquired
no jurisdiction in the premises; that he was wholly
ignorant of legal matters and had only learned since
November 20, 1907, that the judgment and order in
the proceeding to appoint a conservator were illegal
and void for want of jurisdiction. The petition prays
that the order entered March 20, 1903, finding appel-
lant to be a spendthrift and appointing a conservator
of his estate be vacated, set aside and declared null
and void. Upon a hearing in the County Court the
prayer of the petition was denied, and from the order
entered appellant appealed to the Circuit Court, where
upon a hearing, a like order was entered denying the
prayer of the petition, and from such order a further
appeal is prosecuted to this court.

It is first insisted on behalf of appellant that the
petition filed March 16, 1903, for the appointment of
a conservator of his estate was not sufficient to give
the court jurisdiction of the subject-matter, in this,
that appellant was not therein alleged, in the language
of the statute, ''so to spend, waste or lessen his estate
as to expose himself or his family to want or suffering,
or some county, town or incorporated city or village
to any charge or expense for the support of such spend-
thrift or his family.'' The language quoted was con-
tained in section 1, chapter 86, of the statute in force
when the petition was filed, and the same language is
contained in section 1, chapter 86 of the statute now in
force. Rev. Stat. 1908, 1391. By the statute in force
March 16, 1903, it was, however, provided, that the pro-
ceedings subsequent to the making of an application
for the appointment of a conservator shall conform ''as
near as may be'' to the provisions of an act relating to
the commitment and detention of lunatics, which act

then, as now, was designated in the revised statutes as chapter 85, Starr & Curtis, volume 2, 2663.

It will be observed that the section of the statute in question, in force March 16, 1903, and as amended and now in force, does not assume to prescribe a particular form of application to be made by the party applying to the court for the appointment of a con-servator, but provides that the County Court, upon the proper application of any reputable citizen, should proceed, etc. The reference in the statute to the matter to be alleged, relates more particularly to the character of the evidence necessary to be adduced in order to authorize a finding that a conservator should be appointed in a particular case, and not to the form of the application moving the court to act in the premises. Whether or not the application for the appointment of a conservator is a "proper application" within the meaning of the statute is to be determined by the court. In the case at bar, however, the appellant in and by his petitions filed, respectively, May 9, 1904, and November 14, 1907, without specially limiting his appearance, did not question the regularity of the prior proceedings, but recognized the binding force and effect of the judgment of the County Court appointing a conservator of his estate. By thus appearing generally to the merits appellant must be held to have waived 'any jurisdictional defect arising out of the alleged insufficiency in the allegations of the application for the appointment of a conservator. Ladies of Maccabees v. Harrington, 227 Ill. 511.

It is next urged on behalf of appellant that the County Court was without jurisdiction to adjudge him a spendthrift and to appoint a conservator for his estate because he was not personally present in court when the hearing was had. This insistence is predicated upon certain parol evidence in the record to the effect that at the time the hearing was had, appellant was in Hot Springs, Arkansas; that the service of summons was had upon him when he was on a rail-

road train, bound for the south, and that appellant was not in fact personally in court when the proceedings in question were had. Conceding that appellant was entitled to notice of the hearing upon the application to adjudge him a spendthrift and to appoint a conservator of his estate, and that the personal presence of appellant at such hearing was a jurisdictional prerequisite, the judicial record of the proceedings wherein appellant was adjudged a spendthrift, offered in evidence on behalf of appellant, shows that appellant was duly served with summons by the sheriff of McLean county to appear at the time and place fixed by the court for the hearing upon said application, and further shows, as follows: "Now comes the said sheriff and brings into open court said James Bishop, alleged to be a spendthrift."

A judicial record imports absolute verity and cannot be impeached by parol testimony. "When the record is once made up it is conclusive upon all parties until altered or set aside by a court of competent jurisdiction, and all questions relating to the time when it was in fact made, or in regard to the authority on which it was made, or in respect to the truthfulness of its recitals, must be settled by reference to the record alone. But if an order is improperly entered, or does not state the facts as they actually occurred, application may be made to the court in which the record is, to correct its record." West Chicago Street R. R. Co. v. Morrison, 160 Ill. 288. The same doctrine was announced in Roche v. Beldam, 119 Ill. 320, and it was there further said: "If the record, as it remains in the Circuit Court, does not state the facts as they actually occurred, defendant should have made application to have the court correct the record, so as to make it speak the truth." The petition here involved does not seek to have the judicial record, as made, amended or corrected, but merely seeks to vacate a judgment of a court of competent jurisdiction upon alleged jurisdictional grounds

which are contradicted by the express recitals of the record. In such case the record must be held to be conclusive. Furthermore, the filing by appellant of his petitions of May 9, 1904, and November 14, 1907, heretofore mentioned, whereby he appeared generally to the merits, constituted a waiver by him of any lack of jurisdiction by the County Court of his person. Quartier v. Dowiat, 219 Ill. 326.

There is a clear distinction between a proceeding instituted to adjudge a person a lunatic or insane and a proceeding instituted to adjudge a person a spendthrift. The former relates to an inquiry and determination as to the condition of mind of the patient without special reference to his property, while the latter relates to an inquiry and determination as to certain habits of the person involved regarding his disposition to spend, waste or lessen his estate. The sixth paragraph of section 1 of the act relating to the construction of statutes specifically defines the words insane person, lunatic and spendthrift as follows: "The words 'insane person' and 'lunatic' shall include every idiot, *non compos*, lunatic, insane or distracted person; and the word 'spendthrift' shall include every person who is liable to be put under guardianship on account of excessive drinking, gaming, idleness or debauchery." Rev. Stat. 1908, 2084.

By the verdict of the jury and the judgment of the court in this case, appellant was found and adjudged to be a spendthrift, and the provisions of the statute relating to insane persons and lunatics were not, therefore, wholly applicable to the conduct of the proceedings. The provision in section 1 of chapter 86, in force March 16, 1903, that the proceedings in the County Court subsequent to the application for the appointment of a conservator shall conform "as near as may be" to the provisions of an act relating to the commitment and detention of lunatics does not demand a strict compliance with the provisions of said last mentioned act. The phrase "as near as may be" is merely

directory and advisory, and is to be construed as contemplating some variation from the prescribed course and leaving it in the discretion of the court to reject such provisions of the act as are not strictly applicable to the character of the proceedings involved. Rock Island Nat. Bank v. Thompson, 173 Ill. 593; Potter v. Robinson, 40 N. J. Law, 114.

Upon the errors assigned and argued on behalf of appellant we perceive no reason for disturbing the judgment of the Circuit Court, and the same will be affirmed.

Since the foregoing opinion was written and adopted, but before the same was filed, the death of the appellant, James Bishop, has been suggested and Wesley Stubblefield, as executor of the last will and testament of said deceased, has been substituted as party appellant.

*Affirmed.*